UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELIAS WEXLER, ZERO INTERNATIONAL REALTY CO., INC., ZERO OHIO, LLC, ZERO REALTY NC, LLC, 391 CONCORD AVENUE, INC, ZERO AMERICA LATINA, LTD., ZERO ASIA PACIFIC, LTD., and ZERO EAST, LTD., <br><br>                                  Plaintiffs, <br><br> - against - <br><br> ALLEGION (UK) LIMITED, ALLEGION PLC, and SCHLAGE LOCK COMPANY LLC, <br><br>                                  Defendants. | **OPINION AND ORDER** <br><br> 16 Civ. 2252 (ER) |
| SCHLAGE LOCK COMPANY, LLC, <br><br>                      Counterclaimant, <br><br> - against - <br><br> ELIAS WEXLER, <br><br>                      Counterclaim Defendant. | |
| SCHLAGE LOCK COMPANY, LLC, <br><br>                                  Plaintiff, <br><br> - against - <br><br> JACOB WEXLER, and LEGACY MANUFACTURING LLC, <br><br>                                  Defendants. | 18 Civ. 4033 (ER) |

Ramos, D.J.:

On August 25, 2020, the Court denied in part and granted in part motions by the Plaintiffs and the Legacy Defendants (collectively, the "Wexler Parties") to compel Schlage's response to certain discovery requests, and for a protective order shielding them from several of Schlage's requests ("August 25 Order").[1] Doc. 159. Pending before the Court is the Wexler Parties' motion for clarification or reconsideration of the August 25 Order with respect to the Court's rulings on two distinct discovery disputes. Doc. 161. For the reasons set forth below, the motion is denied.

I. **Factual Background and Procedural History**

This case arises from Wexler's disputes with Schlage following sale of his former company, Zero, to Schlage, Wexler and his son Jacob's subsequent termination by Schlage, and Wexler and Jacob's endeavors after termination. Doc. 159 at 2-6. In relevant part, Wexler alleges that Schlage defamed him by telling industry insiders that he had been fired for cause, costing him $45 million in damages in lost business, and teaching, speaking, and expert witness opportunities. Doc 52 at ¶¶ 93-103, 121-28, 149-64. Schlage, among other things, alleges tortious interference and related claims against the Legacy Defendants for interfering with Wexler's non-compete agreement with Schlage. 18 Civ. 4033 Doc. 1 at ¶ 127. Of particular relevance to this motion, Schlage alleges that Jacob worked for one year at AAA Architectural Hardware ("AAA") during the pendency of his non-compete with Schlage, and admitted to AAA that he sought industry advice from his father. *Id.* at ¶¶ 75, 82.

---

[1] The Court assumes the parties' familiarity with the facts, procedural history, and holdings in its August 25 Order and will only set forth those facts necessary to decide this motion. Doc. 159. Any abbreviations remain as defined in the August 25 Order unless otherwise noted. *Id.*

2

Following the close of document discovery on April 22, 2019, the parties exchanged deficiency letters and had two meet and confers to resolve numerous discovery disputes. Doc. 159 at 8-10. On November 27, 2019, the Wexler Parties filed a motion to compel responses to certain of their document requests, and a motion for a protective order against certain of Schlage's document requests. *Id.* at 10.

The Wexler Parties sought to compel, *inter alia*, a further response to their first set of document requests No. 18. *Id.* at 22. The request asked for all documents and communications concerning AAA, Jacob, Wexler, or Legacy, which the Wexler parties assert are relevant to their tortious interference and conspiracy claims against Schlage. The Wexler Parties argued that Schlage's initial response was insufficient because the Wexler Parties had produced emails that Schlage should also have produced and provided examples of such emails. Doc. 159 at 22. Schlage responded that any further AAA documents were irrelevant because they neither proved nor disproved that Jacob or Legacy unlawfully competed against Schlage. Doc. 156 at 38. Schlage further reasoned that it had already searched the email files of 13 custodians for responsive documents, and that it would be unduly burdensome to search the email of every other employee. *Id.*

The Wexler Parties also requested a protective order with respect to Schlage's document requests Nos. 55-58. Doc. 159 at 26. The requests sought disclosure of Wexler's personal and business state and federal tax returns filed for the five years prior to his employment at Schlage until the present, as well as W-2s, 1099s, and other financial documentation. Doc. 157 at 1-3. The Wexler Parties objected that these requests were irrelevant, vague, overbroad, and unduly burdensome. *Id.* Schlage responded that Wexler's financial records were relevant because he alleges substantial

3

economic losses as a result of Schlage's defamatory statements including the loss of teaching positions, speaking engagements, and work as an expert. *Id.* Schlage reasoned that Wexler's request for damages "put his financial records squarely within the scope of relevant discovery." *Id.* at 1-2. Schlage further argued that Wexler's financial records would be easily accessible for him or his accountants. *Id.* at 2.

On August 25, 2020, the Court issued an order denying the Wexler Parties' motion to compel a further response to document request No. 18 and for a protective order with respect to Schlage's requests for Wexler's financial records. Doc. 159 at 27-28. With respect to request No. 18, the Court found that the examples the Wexler Parties provided were irrelevant because they "ha[d] nothing to do with the non-competition claims, as they provide[d] updates on Zero International products to Jacob while he was working at AAA Architectural Hardware." *Id.* at 22. In denying the Wexler Parties' motion for a protective order with respect to Schlage's requests for financial records, the Court explained, "[u]nlike in the cases cited by [the Wexler Parties] denying requests for similar financial information, here Wexler's financial information is relevant to his damages claims and cannot be gathered from another source." *Id.* at 26 n.17.

On September 3, 2020, the parties met and conferred on these issues but were unable to reach a compromise. Doc. 162 at 3-4. On September 8, 2020, the Wexler Parties filed a motion, pursuant to Local Civil Rule 6.3 and Rules 59(e) and 60(a) of the Federal Rules of Civil Procedure, for clarification or reconsideration of the Court's August 25 Order with respect to request No. 18, and reconsideration of the Court's

August 25 Order with respect to the portion of Schlage's requests seeking Wexler's personal tax returns.  *Id*.  On September 16, 2020, Schlage opposed.[2]  Doc. 164.

## II.     Standards of Review

### A.     Local Civil Rule 6.3 and Fed. R. Civ. P. 59(e)

"The standards governing motions to alter or amend judgment under Rule 59(e) and motions for reconsideration or reargument under Local Rule 6.3 are identical." *Farez-Espinoza v. Napolitano*, No. 08 Civ. 11060 (HB), 2009 WL 1118098, at *3 (S.D.N.Y. Apr. 27, 2009) (citing *Henderson v. Metro. Bank & Trust Co.*, 502 F. Supp. 2d 372, 375 (S.D.N.Y. 2007)).  "A motion for reconsideration or re-argument shall be granted only if the court has overlooked 'controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court.'"  *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) (quoting *Greenwald v. Orb Commc'ns & Mktg., Inc.*, No. 00 Civ. 1939 (LTS) (HBP), 2003 WL 660844, at *1 (S.D.N.Y. Feb. 27, 2003)). "Reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (citation omitted). "Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied." *Mikol*, 554 F. Supp. 2d at 500 (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

---

[2]  On March 3, 2021, counsel for the Wexler Parties were granted leave to withdraw and the case was stayed until March 31, 2021 for the Wexler Parties to retain new counsel.  Doc. 171.

### B. Rule 60(a)

Rule 60(a) of the Federal Rules of Civil Procedure also allows a court to clarify a judgment. Under that rule, a court may provide "clarification and explanation, consistent with the intent of the original judgment[.]" *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 956 F. Supp. 2d 402, 410 (E.D.N.Y. 2013) (quoting *Garamendi v. Henin*, 683 F.3d 1069, 1079 (9th Cir. 2012)). Orders that clarify a judgment should "add certainty to an implicated party's efforts to comply with the [original] order" or "provide fair warning as to what future conduct may be found contemptuous." *N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984). However, Rule 60(a) "does not allow a court to make corrections that, under the guise of mere clarification, reflect a new and subsequent intent because it perceives its original judgment to be incorrect." *Consumer Fin. Prot. Bureau v. Sprint Corp.*, 320 F.R.D. 358, 363 (S.D.N.Y. 2017) (quoting *L.I. Head Start Child Dev. Servs.*, 956 F. Supp. 2d at 410)). Therefore, the distinction between an error that may be clarified under Rule 60(a) and one that must be "reconsidered" under Rule 59 and Local Civil Rule 6.3 is that "a correction under Rule 60(a) cannot alter the substantive rights of the parties, but rather may only correct the record to reflect the adjudication that was actually made." *Consumer Fin. Prot. Bureau*, 320 F.R.D. at 363 (citation omitted).

## III. Discussion

### A. Document Request No. 18

The Wexler Parties fail to satisfy their burden under Local Civil Rule 6.3 or Rule 59(e) with respect to their document request no. 18. The Wexler Parties argue here, for the first time, that Schlage conceded the relevance of the documents requested by

6

identifying AAA in its own pleadings, document requests and initial disclosures, and by previously producing documents related to AAA.  Doc. 162 at 7-8.  However, "[a] motion for reconsideration is not a vehicle for parties to present arguments they could have raised earlier but did not."  *City of Almaty, Kazakhstan v. Ablyazov*, No. 15 Civ. 5345 (AJN), 2021 WL 1180058, at *1 (S.D.N.Y. Mar. 29, 2021) (citing *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 115 (2d Cir. 1991)).

      The Wexler Parties further argue that request No. 18 is plainly relevant.  Doc. 162 at 8.  But, the Court never held that the request was irrelevant:  Schlage had already produced documents responsive to this request, and the Court merely held that the examples the Wexler Parties provided concerning documents that should have been produced by Schlage were irrelevant.  Doc. 159 at 22.  Movant's additional argument, that those examples are particularly relevant because they tend to show that Schlage knew Jacob was selling Zero products, remains unconvincing.  Doc. 162 at 8 n.3.  Indeed, it is a reprisal of their argument on their initial motion to compel, which the Court considered and rejected.  Doc. 159 at 22.  The Wexler Parties cannot meet the heavy burden of reconsideration by repeating the same arguments from their motion papers without pointing to any overlooked law or facts.  *Mikol*, 554 F. Supp. 2d at 500 (citing *Shrader*, 70 F.3d at 257).

      The Wexler Parties' motion is therefore denied with respect to document request No. 18.

### B.   Wexler's Tax Returns

The Wexler Parties' position regarding Wexler's tax returns is equally unavailing. The Wexler Parties argue that Schlage has failed to show that Wexler's personal tax returns are relevant, or to proffer a compelling need for them, suggesting that the Court failed to apply controlling precedent.  Doc. 162 at 6.  But the Court cited and distinguished the two cases upon which the Wexler Parties relied in their motion for a protective order.  Doc. 159 at 26 n.17.  In *Rosas v. Alice's Tea Cup, LLC*, the court granted plaintiffs' motion for a protective order with respect to their tax returns because the FLSA defendant had not shown relevance or compelling need.  127 F. Supp. 3d 4, 11 (S.D.N.Y. 2015).  In *Mazzaro de Abreu v. Bank of Am. Corp.*, the court similarly denied defendants' motion to compel plaintiffs' tax documents because they were likely governed by Brazilian law, were "not directly relevant to the claims and defenses," were not important to resolving the issues, and the burden of the proposed discovery outweighed the benefit of their production.  No. 06 Civ. 673 (LMM) (DFE), 2008 WL 4787553, at *3 (S.D.N.Y. Oct. 28, 2008).  Here, by contrast, the tax returns are clearly relevant to Wexler's damages claims, and the Wexler Parties had yet to produce any financial documents at the time that the August 25 Order was issued.  There was thus a compelling need for their production to Schlage.[3]

The Wexler Parties also argue that because they have now produced Wexler's W-2s, 1099s, and other financial documents responsive to the remainder of Schlage's

---

[3] The additional cases the Wexler Parties cite in the instant motion are likewise inapposite. *Xiao Hong Zheng v. Perfect Team Corp.*, 739 F. App'x 658, 660-61 (2d Cir. 2018) (affirming denial of request to ask tax questions at deposition to attack defendant's credibility); *Sadofsky v. Fiesta Prods., LLC*, 252 F.R.D. 143, 150 (E.D.N.Y. 2008) (denying request for tax documents where the same information was "readily obtainable by examining the invoices already produced"); *Chen v. Republic Rest. Corp.*, No. 07 Civ. 3307 (LTS) (RLE); 2008 WL 793686, at *1-3 (S.D.N.Y. Mar. 26, 2008) (denying request for FLSA plaintiffs' tax returns because they were irrelevant and defendant showed no compelling need); *Hamm v. Potamkin*,

requests following the August 25 Order, he should not be compelled to produce his personal tax returns. *Id.* at 6-7 & n.2. This argument is new and therefore the improper subject of a motion for clarification or reconsideration. *Mikol*, 554 F. Supp. 2d at 500 (citation omitted). It is also entirely uncompelling. That the Wexler Parties refused to produce documents responsive to any of the financial records requests, which were clearly relevant to Wexler's damages allegations, before the August 25 Order issued, and have now decided to produce some but not all of what the Court clearly ordered, is not an argument for clarification or reconsideration: it is an improper attempt at appeal. A motion for reconsideration is not meant for the parties to "reflexively reargue those issues already considered when a party does not like the way the original motion was resolved, and is not a substitute for an appeal." *S.E.C. v. Neto*, 27 F. Supp. 3d 434, 439 (S.D.N.Y. 2014) (citation omitted).

Accordingly, the Wexler Parties' motion is denied with respect to Wexler's tax returns.

## IV.   Conclusion

For all of these reasons, the Wexler Parties' motion for clarification or reconsideration of the Court's August 25 Order is denied in its entirety. The Clerk is respectfully directed to terminate the motion, Doc. 161.

SO ORDERED.

Dated:   March 31, 2021
         New York, New York

_____
Edgardo Ramos, U.S.D.J.

---

No. 98 Civ. 7425 (RWS), 1999 WL 249721, at *2 (S.D.N.Y. Apr. 28, 1999) (denying motion to compel defendants' tax returns where plaintiffs conceded that other documents regarding net worth would be acceptable).